UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLIAM WALTERS,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

No.  1:14-CV-03147-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 15 & 21.  David M. Church represents Plaintiff William Walters and Special

Assistant United States Attorney Benjamin J. Groebner represents Defendant

Commissioner of Social Security (the "Commissioner").  Plaintiff brings this

action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

Commissioner's final decision, which denied his application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C

§§ 401-434.  After reviewing the administrative record and briefs filed by the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 1**

parties, the Court is now fully informed.  For the reasons set forth below, the Court

grants the Commissioner's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed an application for DIB payments on November 11, 2010,

AR 60, alleging onset of disability on February 5, 2009.  AR 151.  His application

was initially denied on April 29, 2011, AR 60-74, and on reconsideration on May

23, 2012, Tr. 75-89.  On December 10, 2012, Administrative Law Judge ("ALJ")

Timothy Mangrum held a hearing in Yakima, Washington.  AR 32.  On March 21,

2013, ALJ Mangrum issued a decision finding Plaintiff ineligible for SSI

payments.  AR 12-27.  The Appeals Council denied Plaintiff's request for review

on September 10, 2014, AR 1-3, making the ALJ's ruling the "final decision" of

the Commissioner.  Plaintiff timely filed the present action challenging the denial

of benefits, and accordingly, his claims are properly before this Court pursuant to

42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 2

1   under a disability only if the claimant's impairments are of such severity that the

2   claimant is not only unable to do his previous work, but cannot, considering

3   claimant's age, education, and work experience, engage in any other substantial

4   gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

5   1382c(a)(3)(B).

6         The Commissioner has established a five-step sequential evaluation process

7   for determining whether a claimant is disabled within the meaning of the Social

8   Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

9   *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

10        Step one inquires whether the claimant is presently engaged in "substantial

11  gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

12  activity is defined as significant physical or mental activities done or usually done

13  for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

14  substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

15  404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

16        Step two asks whether the claimant has a severe impairment, or combination

17  of impairments, that significantly limits the claimant's physical or mental ability to

18  do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

19  impairment is one that has lasted or is expected to last for at least twelve months,

20  and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 3**

416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of

1  performing other work; and (2) such work exists in "significant numbers in the

2  national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

3  676 F.3d 1203, 1206 (9th Cir. 2012).

4  ### III.    Standard of Review

5      A district court's review of a final decision of the Commissioner is governed

6  by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

7  Commissioner's decision will be disturbed "only if it is not supported by

8  substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

9  1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

10  a mere scintilla but less than a preponderance; it is such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

12  *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

13  1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

14  whether the Commissioner's findings are supported by substantial evidence, "a

15  reviewing court must consider the entire record as a whole and may not affirm

16  simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

17  *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

18  F.2d 498, 501 (9th Cir. 1989)).

19      In reviewing a denial of benefits, a district court may not substitute its

20  judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 5**

1  1992).  If the evidence in the record "is susceptible to more than one rational

2  interpretation, [the court] must uphold the ALJ's findings if they are supported by

3  inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

4  1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9ᵗʰ Cir.

5  2002) (if the "evidence is susceptible to more than one rational interpretation, one

6  of which supports the ALJ's decision, the conclusion must be upheld").  Moreover,

7  a district court "may not reverse an ALJ's decision on account of an error that is

8  harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

9  inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

10  The burden of showing that an error is harmful generally falls upon the party

11  appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

13          The facts of the case are set forth in detail in the transcript of proceedings,

14  and accordingly, are only briefly summarized here.   Mr. Walters was born on

15  December 8, 1970, AR 151, making him 43 years old on the date of his hearing.

16  Mr. Winters has completed high school, AR 40, and has worked in a variety of

17  labor oriented positions, AR 189.  Mr. Walters alleges that he is unable to work

18  due to physical limitations arising from his two back injuries, AR 41, as well as

19  mental health based limitations including memory and concentration problems,

20  difficulty with social interactions, and mood instability, AR 43.

# V.    The ALJ's Findings

The ALJ determined that Plaintiff was not disabled under the Social Security Act and denied his application for DIB payments, filed on November 11, 2010. AR 12-27.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2009, his alleged onset date (citing 20 C.F.R. § 404.1571 *et seq.*).  AR 14.

**At step two**, the ALJ found Plaintiff had the following severe impairments: ADHD, affective disorder, substance abuse, and degenerative disc disease (citing 20 C.F.R. § 404.1520(c)).  AR 14.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526).  AR 16.

At **step four**, the ALJ found that Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b)[1] except that he must be limited to unskilled[2] jobs with

---

[1] 20 C.F.R. § 404.1567(b) defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

[2] Unskilled work involves simple duties which need little or no judgment and can be learned on the job in a short period of time.  20 C.F.R. § 404.1568(a).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 7**

only occasional changes in the work setting, cannot kneel or climb ladders, ropes, or scaffolds, and can only occasionally stoop, crouch and interact with the public, co-workers and supervisors.  AR 18.

Vocational expert Trevor G. Duncan, M.Ed., testified at the hearing that an individual with Plaintiff's limitations could not perform any of his past relevant work, AR 56-57, and based on this testimony, the ALJ found that Plaintiff could no longer perform his past work as an auto assembler, construction worker, laundry attendant, lubrication supervisor, stock clerk, janitor, press operator, bowling alley clerk, or shipping clerk, AR 25-26.

At **step five**, the ALJ found that, considering his age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 26.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence.  Specifically, Plaintiff argues the ALJ erred by improperly: (1) discrediting the opinions of several physicians concerning the extent of his limitations; (2) rejecting his subjective testimony concerning the intensity, persistence, and limiting effect of his impairments as not entirely credible; (3) ignoring lay witness testimony from the Plaintiff's spouse, Monique

Walters; and (4) finding at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## VII.    Discussion

### A. Physician's Opinions

The Ninth Circuit has distinguished between three classes of physicians in defining the weight to be given to their opinions: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

A treating physician's opinion is given the most weight, followed by an examining physician, and then by a non-examining physician. *Id.* at 830-831. In the absence of a contrary opinion, a treating or examining physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If contradicted, a treating or examining doctor's opinion can be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The controverting opinion of a non-examining physician, however, does not by itself constitute substantial evidence justifying the rejection of a treating or examining physician's opinion. *Id.* at 831.

\\

\\

### 1.  Treating Physician Howard Harrison, M.D.

In December of 2012, Dr. Harrison completed a check-box form in which he opined that the severity of Mr. Walters's impairments meets some of the criteria of 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "listings") §§ 12.02 (Organic Mental Disorders) & 12.04 (Affective Disorders).  AR 508-514.  Mr. Walters complains that the ALJ improperly rejected Dr. Harrison's opinion, but does argue the error's effect.  His argument could be read in two ways: (1) the ALJ failed to properly consider Dr. Harrison's opinion which lead to an error in finding that Mr. Walters did not meet the listings; or (2) the ALJ's residual functional capacity does not accurately reflect Mr. Walters's functional limitation because he did not properly consider Dr. Harrison's list of symptomatology.  Neither argument is persuasive.

### a.  The Listings

Each diagnosis under section 12.00, titled "Mental Disorder," consists of clinical findings listed under paragraph A (the "paragraph A criteria") and functional limitations listed under paragraph B (the "paragraph B criteria").  20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.00A; *see also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  To meet a particular listing, a claimant must demonstrate that he suffers from a set number of criteria from both paragraph A and paragraph B.  *Ramirez*, 8 F.3d at 1452.  If the claimant does not meet the required number of paragraph B criteria under sections 12.02, 12.03 12.04 or

12.06, he may still be entitled to an award of benefits at step three if he meets the requirements of paragraph C (the "paragraph C criteria").  20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.00A.

Dr. Harrison's December 2012 opinion only offers his assessment of which paragraph A criteria Mr. Walters satisfies and offers no evaluation of whether Mr. Walters meets any of the paragraph B or paragraph C criteria.  AR 508-510.  In finding that Mr. Walters did not meet the listings of either 12.02 or 12.04, the ALJ did not make findings regarding the paragraph A criteria but instead found that Mr. Walters was not entitled to benefits at step three because he did not meet any of the paragraph B or paragraph C criteria.  AR 16-18.

Mr. Walters does not argue that he meets the paragraph B or paragraph C criteria and for good reason.  The paragraph B criteria for sections 12.02 and 12.04 are identical and require that a claimant experience at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence and pace; or repeated episodes of decompensation, each of extended duration. There is no evidence in the record that contradicts the ALJ's conclusion that Mr. Walters does not suffer from marked restrictions in any of these areas.  None of the physicians who have offered opinions on the matter have opined that Mr. Walters

1   has more than moderate restrictions in his ability to perform any of these functions.

2   *See* AR 66; AR 81.

3      There is a similar absence of evidence that Mr. Walters met the paragraph C

4   criteria.  The paragraph C criteria for both 12.02 and 12.04 are also identical.  To

5   qualify for benefits a claimant must experience one of the following: (1) repeated

6   episodes of decompensation, each of extended duration; (2) a residual disease

7   process that has resulted in such marginal adjustment that even a minimal increase

8   in mental demands or change in the environment would be predicted to cause the

9   individual to decompensate; or (3) a current history of one or more years of

10  inability to function outside of a highly supportive living arrangement, with an

11  indication of continued need for such an arrangement.  As the ALJ points out, AR

12  17, the record simply does not depict an individual who suffers from any of the

13  significant functional limitations listed in paragraph C.

14     In the context of the ALJ's step three analysis, despite the decision's use of

15  language to the contrary, it appears that the ALJ has not rejected Dr. Harrison's

16  opinion at all.  Dr. Harrison offers an opinion only on the paragraph A criteria.

17  The ALJ did not make findings about the paragraph A criteria, and thus, did not

18  reject Dr. Harrison's opinion on the matter.  ALJ Mangrum, instead, reasons that

19  because Mr. Walters does not meet the paragraph B or paragraph C criteria, he

20

1    does not meet the listings of either section 12.02 or 12.04.  Accordingly, the ALJ

2    committed no error in finding that Mr. Walters did not meet the listings.

3                    **b.  Residual Functional Capacity**

4           With respect to the ALJ's assessment of Mr. Walters's residual functional

5    capacity, even if the Court were to assume that the ALJ erred in rejecting the

6    symptomatology listed in Dr. Harrisons 2012 opinion, Mr. Walters cannot meet his

7    burden of showing that such an error was harmful.  *See Shinseki*, 556 U.S. at 409–

8    10.  There is no indication that the symptoms listed by Dr. Harrison—relating to

9    memory and concentration issues, difficulty with social interaction, and mood

10   instability—impose functional limitations greater than assessed by the ALJ.  In

11   fact, ALJ Mangrum's assessment of Mr. Walters's residual functional capacity

12   imposes limitations designed to alleviate the effect of these very symptoms.

13   Because Mr. Walters has difficulty with memory and concentration, the ALJ

14   limited him to unskilled work.  AR 18.  Because Mr. Walters has difficulty getting

15   along with others and is prone to mood swings, the ALJ limited him to only

16   occasional contact with others and occasional changes in work setting.  *Id.*  The

17   evidence does not reflect more severe limitation than opined by the ALJ, and

18   accordingly, any error in rejecting Dr. Harrison's December 2012 opinion is

19   harmless.

20   \\

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 13**

## 2.  Examining Psychologist Emma Joan Billings, Ph.D.

Mr. Walters's complaints regarding the ALJ's rejection of Dr. Billings's opinion are infected by the same problem: there is no indication that Dr. Billings's report is indicative of functional limitation beyond that assessed by the ALJ.  The ALJ gave "little weight" to any significant limitations to attention or concentration considering the claimant admitted he was not taking any medication for his ADHD and because he was also using marijuana on a near-daily basis.  But Dr. Billings's report does not appear to reflect an opinion that Mr. Walters suffers from "significant" limitations in the areas of attention or concentration.

Although Dr. Billings describes some of Mr. Walters's attention and concentration related symptomatology, she does not explain individual symptoms in terms of functional limitations.  The only portion of her opinion that discusses limitations does so generally and appears when she discusses Mr. Walters's Global Assessment of Function ("GAF") Score of 59.  AR 450.  In explaining her assessed GAF score, Dr. Billings indicated that Mr. Walters suffers from only "[m]ild impairment in occupational and social functioning."  *Id.*  Both non-examining physicians reviewed Dr. Billings's report and concluded that despite the symptoms evidenced therein Mr. Walters retained the ability to perform simple repetitive tasks in a work setting.  As the Commissioner points out, ECF No. 21 at 11, the ALJ's residual functional capacity adequately accounted for that level of

impairment by limiting Mr. Walters to unskilled jobs with only occasional changes

in work setting and interaction with others.  AR 18.  Even assuming that the

reasons provided by the ALJ for discounting Dr. Billings's opinions were legally

insufficient, that error would be harmless because the evidence establishes that the

ALJ's assessment of Mr. Walters's residual functional capacity encompasses the

functional limitations supported by the record.  *See* 20 C.F.R. § 404.1545(a)(2)

(requiring an ALJ to consider the effects of all of a claimant's "medically

determinable impairments," severe or non-severe); *see also Turner v. Comm'r of

Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that an ALJ's residual

functional capacity need only be consistent with the functional limitations

evidenced by the record).  Accordingly, any error in rejecting Dr. Billings's

opinion is harmless.

### 3.  Non-Examining Physician Patricia Kraft, Ph.D.

The ALJ gave great weight to Dr. Kraft's opinion that Mr. Walters should be

limited to simple repetitive tasks by limiting him to unskilled work,[3] but gave

limited weight to Dr. Kraft's assessment of Mr. Walters's social functioning

limitations. AR 24.  Mr. Walters argues only that the ALJ erred by failing to

---

[3] Although not raised by Mr. Walters, and accordingly not addressed by the Court, it is worth noting that the absence binding authority in the Ninth Circuit has led courts to reach different conclusions about whether a limitation to simple repetitive tasks actually equates to unskilled work. *See Orucevic v. Astrue*, No. C07-1981-CRD, 2008 WL 4621420 (W.D. Wash. 2008) (collecting cases); *see also Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D. Cal. 2005) (collecting cases).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 15

1    include in his residual functional capacity the moderate limitation assessed by Dr.

2    Kraft in Mr. Walters's ability to maintain attention and concentration.  ECF No. 15

3    at 18.   Mr. Walters's argument, however, ignores the narrative fields that

4    accompany the physician's ratings of an individual's understanding and memory

5    limitations and sustained concentration and persistence limitations.  AR 85.  On the

6    same page in which Dr. Kraft opines that Mr. Walters suffers from moderate

7    limitations in his ability to maintain concentration and attention she indicates that

8    he retains the ability to perform simple repetitive tasks.  *Id.*  Finding that Mr.

9    Walters could perform the simple duties involved in unskilled work does not

10   require the rejection of Dr. Kraft's opinion.  Her opinion does not suggest that Mr.

11   Walters suffers from moderate difficulties maintaining attention and concentration

12   during performance of simple repetitive tasks.  Rather, it indicates that simple

13   repetitive tasks are the most Mr. Walters could do despite his moderate limitations.

14        The ALJ carefully considered Dr. Kraft's opinion and adequately

15   accommodated the moderate limitation in attention and concentration by limiting

16   Mr. Walters to unskilled work.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

17   1174 (9th Cir. 2008) (holding that a limitation to simple, repetitive tasks

18   adequately captures moderate restrictions in a claimant's ability to maintain

19   concentration, persistence, and pace where that conclusion is supported by the

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 16**

1  record).  Accordingly, the ALJ did not err in failing to explicitly include that

2  limitation in his assessment of Mr. Walters's residual functional capacity.

### 4.  Non-Examining Physician Robert Hoskins, M.D.

4       Dr. Hoskins reviewed Mr. Walters's records in September of 2011.  During

5  that review, Dr. Hoskins opined that Mr. Walters should avoid concentrated

6  exposure to extreme heat, vibration, and hazards.  The ALJ rejected Dr. Hoskins's

7  opinion regarding Mr. Walters's environmental limitations because they were

8  inconsistent with the "totality of the evidence in the record, including the evidence

9  of the claimant engaging in activities showing greater functioning ability as

10  discussed earlier (e.g. shoveling snow, gardening, building birdhouses, walking the

11  dog, coaching T-ball etc.)."  But none of Mr. Walters's activities involve

12  concentrated exposure to extreme heat, vibration, or hazards.  Nor does the record

13  substantiate the ALJ's conclusion that Mr. Walters is able to withstand

14  concentrated exposure to these elements.

15       Mr. Walters argues that this error is harmful because, at step five, each of the

16  jobs the ALJ found Mr. Walters could perform—production assembler, hand

17  packager, and hotel/motel housekeeper—involve some measure of concentrated

18  exposure to extreme heat, vibration, or hazards.  But Dictionary of Occupational

19  Titles specifically states that exposure to extreme heat, vibration, moving

20  mechanical parts, electric shock, high exposed places, radiation, explosives, or

1   toxic caustic chemicals are "not present" in all three jobs.  Dictionary of

2   Occupational Titles §§ 323.687-014, 559.687-074, & 706.687-010.  Although the

3   ALJ erred in rejecting Dr. Hoskins opinion regarding Mr. Walters's environmental

4   limitations, the jobs he found that Mr. Walters could perform at step five

5   nonetheless each accommodate those limitations.  Accordingly, the ALJ's error in

6   rejecting Dr. Hoskins opinion is harmless.

7   ### 5.  Treating Physician James Martin, D.C.

8       Dr. Martin completed numerous vocational assessments related to Mr.

9   Walters's workers compensation claim which offer opinions about Mr. Walters's

10  functional limitations.  The ALJ gave "little weight" to Dr. Martin's earlier

11  assessments because subsequent treatment notes showed overall improvement in

12  Mr. Walters's back.  Substantial evidence supports this conclusion.

13      Early vocational assessments from Dr. Martin indicate that Mr. Walters was

14  limited to less than sedentary work with additional limitations in both postural and

15  manipulative activities.  AR 275, 283, 285, 294, and 309.  Dr. Martin's early

16  treatment records reflect symptoms that corroborate these limitations, including

17  relatively significant decreased range of motion, muscle spasms, and radiating

18  pain.  *See, e.g.*, AR 278.

19      Later assessments and treatment records, however, reflect significant

20  improvement.  On April 14, 2009, Dr. Martin noted that Mr. Walters displayed

1   increased lower extremity strength and range of motion in his lumbar spine.  AR

2   292.  Although Dr. Martin indicated that Mr. Walters had not yet shown progress

3   with pain, Mr. Walter's rated his pain at only a three to four out of ten.  *Id.*  Later

4   that month, Dr. Martin released Mr. Walters to perform modified duty for eight

5   hours a day.  AR 294.  By May of 2009, Mr. Walters reported his pain intensity

6   was a zero out of ten and that he experienced no pain during activities of daily

7   living or light work activities.  AR 303.  During that same exam, Mr. Walters

8   exhibited additional improvement in range of motion and was able to lift a

9   maximum of 70 pounds during a dynamic maximum effort test (indicating that he

10  could safely lift 35 pounds on a frequent basis).  *Id.*  Dr. Martin concluded after

11  this examination that Mr. Walters "has met all established goals of physical

12  therapy program and is currently asymptomatic."  AR 304.

13          Despite this assessment, Mr. Walters continued to complain of mild pain

14  with occasional flare-ups.  *See*, *e.g.*, AR 306 (indicating Mr. Walters experienced

15  mild aches and pains that he treated with ice); AR 307 (rating pain at six to seven

16  out of ten); AR 369 (indicating pain was four to five out of ten after aggravation

17  during household chores).  But Dr. Martin's records continue to reflect steady and

18  continuous improvement.  *See e.g.*, AR 337 ("Overall, acceptable progress toward

19  resolution of complaints is being made."); AR 340 (noting gradual improvement);

20  AR 350 (noting that Mr. Walter's reported pain improvement); AR 356 (noting

1    overall progress and improvement in activities of daily living); AR 364 (noting that

2    despite slow progress Mr. Walters displayed gradual improvement); AR 384

3    (noting no pain with leg extension); AR 402 (noting that Mr. Walters was in the

4    last stages of preparing to attend occupational retraining and has "increased his

5    physical activities").

6         Mr. Walters argues that this documented improvement does not include Mr.

7    Walters's ability to bend, twist, or stoop, as evidenced by Dr. Martin's March 17,

8    2010 opinion indicating that for Mr. Walters to work he would need bending and

9    twisting/stooping on a seldom basis, AR 395, which the form defines as 1-10% of

10   the work day, AR 393.  But as the ALJ points out, AR 25, Mr. Walters's activities

11   and subsequent medical records evidence continued improvement in functioning

12   that corroborates the ALJ's conclusion that Mr. Walters is not as limited in his

13   ability to bend, stoop, or twist as opined by Dr. Martin.  The record reflects that

14   Mr. Walters is able to do light housework, including meal preparation, dishes, and

15   laundry, as well as walk his dog for approximately a half mile on a daily basis.  AR

16   214; AR 448.  Mr. Walters also reported coaching T-ball, building birdhouses, and

17   tinkering in the garage.  AR 448.  Moreover, in May of 2010, Michael Wilson,

18   D.C., observed that Mr. Walters was able to go from a sitting to supine position by

19   using his arms to elevate himself off the table, turn, pivot on his tailbone, and

20   lower himself down to the supine position without hand assistance or visual

1    expression of pain.  AR 257.  Although Mr. Walters's argues for a different

2    interpretation of the evidence, namely that these activities are not inconsistent with

3    Dr. Martin's opinion, the ALJ's is supported by substantial evidence and

4    accordingly, this Court may not disturb it.

5         **B. Plaintiff's Credibility**

6         An ALJ engages in a two-step analysis to determine whether a claimant's

7    testimony regarding subjective pain or symptoms is credible.  *Tommasetti v.*

8    *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce

9    objective medical evidence of an underlying impairment or impairments that could

10   reasonably be expected to produce some degree of the symptoms alleged.  *Id.*

11   Second, if the claimant meets this threshold, and there is no affirmative evidence

12   suggesting malingering, "the ALJ can reject the claimant's testimony about the

13   severity of her symptoms only by offering specific, clear and convincing reasons

14   for doing so." *Id.*

15        In weighing a claimant's credibility, the ALJ may consider many factors,

16   including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

17   reputation for lying, prior inconsistent statements concerning the symptoms, and

18   other testimony by the claimant that appears less than candid; (2) unexplained or

19   inadequately explained failure to seek treatment or to follow a prescribed course of

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 21**

1   treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

2   1284 (9th Cir.1996).

3        Here, the ALJ found that Mr. Walters's "impairments could reasonably be

4   expected to cause the alleged symptoms," but that his statements concerning the

5   intensity, persistence, and limiting effects of his impairments were not entirely

6   credible because (1) the medical record fails to substantiate Mr. Walters's account

7   of his own limitations; and (2) Mr. Walters engaged in activities during the period

8   of disability that undermine his allegations regarding his limitations.  AR 19-23.

9   Mr. Walters contends that the ALJ erred by failing to provide "a specific

10  explanation as to how [the evidence cited] contradicted Mr. Walters's statements"

11  that his limitations preclude gainful employment.  ECF No. 15 at 23.  But the

12  ALJ's assessment of Mr. Walters's credibility includes a meticulous and

13  thoughtfully organized evaluation of the medical record that immediately follows

14  discussion of Mr. Walters's alleged symptoms.  As the Commissioner points out,

15  ECF No. 21 at 6, it is the purposeful juxtaposition of Mr. Walters's allegations and

16  the ALJ's summary of the record that ultimately supports the adverse credibility

17  finding.  Because the ALJ's reasoning, that the contrast between Mr. Walters's

18  allegations and the record renders his testimony less than persuasive, is supported

19  by substantial evidence the Court must uphold the adverse credibility finding.

20  \\

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 22**

### 1.    Physical Limitations

With respect to his physical limitations, Mr. Walters alleges that his back injuries cause significant pain, especially when bending, stooping or lifting, and that he cannot lift more than 25 pounds.  AR 41; AR 271-274.  ALJ Mangrum essentially agreed with Mr. Walters's allegations, limiting him to light work, which requires lifting of no more than twenty pounds, and precluding all work involving kneeling or crawling.  AR 18.  In fact, the only disagreement ALJ Mangrum had with Mr. Walters's allegations concerning his physical limitations relates to his ability to bend, stoop, and crouch.  Despite Mr. Walters's complaints of increased pain, ALJ Mangrum found that Mr. Walters could occasionally[4] stoop and crouch. AR 18.  In rejecting Mr. Walters's testimony concerning the intensity of his postural limitations, the ALJ reasoned that Mr. Walters's activities during the period of disability, in combination with his generally mild results on diagnostic testing, improvement with chiropractic therapy, and relatively conservative treatment regimen, indicated that Mr. Walters was able, despite allegations of increased pain, to perform activities that involve stooping or crouching occasionally.  AR 19-20.

In support of this finding, the ALJ provides a nearly two-page analysis of the medical record highlighting Mr. Walters's mild results on diagnostic testing,

---

[4] Occasionally is defined as occurring from very little to up to one-third of the work day.  SSR 83-10, 1983 WL 31251 (1983).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 23**

1  overall improvement, and conservative treatment.  Shortly after Mr. Walters's

2  February 2009 back injury, Dr. Martin ordered imaging of Mr. Walters's spine.

3  AR 276-77.   This imaging revealed minimal degenerative changes of the mid and

4  lower thoracic spine, mild degenerative disc disease at L5-S1, and slight

5  dextroscoliosis of the lumbar spine, but were otherwise unremarkable.  Dr.

6  Martin's records do indicate that Mr. Walters suffered from relatively significant

7  decreased range of motion, muscle spasms, and radiating pain, *see, e.g.*, AR 278,

8  but as the discussion above elucidates, *supra* pp. 20-21, later entries demonstrate

9  that outside of an occasional flare-up, treatment significantly improved Mr.

10  Walters's prognosis.

11      Contemporaneous treatment records from David Lemmon, D.C., corroborate

12  this improvement.  In July of 2009, Dr. Lemmon noted that noted that despite pain

13  and decreased range of motion Mr. Walters walked with a normal gait, was capable

14  of toe walking, heel walking, and tandem walking with good strength and

15  coordination, and could get in and out of a chair with proper body mechanics and

16  without any increase in pain or discomfort.  AR 318.

17      In addition to his documented improvement, the ALJ noted that Mr. Walters

18  never sought treatment more intensive than chiropractic care.  AR 20.  As the

19  Commissioner points out, the amount and type of treatment is "an important

20  indicator of the intensity and persistence of symptoms."  20 C.F.R.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 24

1    § 404.1529(c)(3).  Although Mr. Walters regularly sought treatment from his

2    chiropractor, he never sought pain medication or referral to a specialist despite

3    continued allegations of pain.  That Mr. Walters's pain was not severe enough to

4    motivate him to seek additional treatment, though certainly not dispositive,

5    provides additional evidence that he is not more limited than expressed by the ALJ.

6          Finally, the ALJ noted that Mr. Walters's activities of daily living are

7    inconsistent with his allegations of his physical limitations.  AR 22-23.  Although

8    Mr. Walters claims that stooping or bending cause him pain, the record reflects that

9    he is able to do light housework, including meal preparation, dishes, and laundry,

10   as well as walk his dog for approximately a half mile on a daily basis.  AR 214;

11   AR 448.  Mr. Walters's ability to perform his duties as a T-ball coach and build

12   birdhouses similarly indicate that Mr. Walters's is less limited than he claims.  AR

13   447-448.  These activities each involve some measure of bending or stooping and

14   thus, are inconsistent with Mr. Walters's claims that he that he cannot do either

15   even occasionally.

16         In sum, when considered as a whole, the ALJ's analysis of Mr. Walters's

17   credibility as it relates to his physical limitations provides the clear and convincing

18   reasons, supported by substantial evidence, required to support an adverse

19   credibility finding.  The ALJ identified specific evidence, inconsistent with Mr.

20   Walters's allegations that his pain precludes him from bending and stooping, that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 25**

1  corroborates the ALJ's conclusions about Mr. Walters's credibility.  Although this

2  evidence may be susceptible to more than one rational interpretation, this Court is

3  bound to uphold the ALJ's findings because they are supported by substantial

4  evidence in the record and inferences reasonably drawn therefrom.  *See Molina v.*

5  *Astrue*, 674 F.3d at 1111.

6                           **2.  Mental Health Based Limitations**

7         With respect to his mental health based limitations, Mr. Walters alleges that

8  he experiences mood fluctuations that involve significant lows that cause him to

9  take out his anger and irritability on others, AR 43, and has difficulty retaining

10  information and staying focused because of his ADHD, AR 43; AR 48.  As with

11  Mr. Walters's testimony concerning his physical limitations, ALJ Mangrum

12  credited the essence of his account of his mental health based limitations, finding

13  that Mr. Walters should be limited to unskilled work with only occasional changes

14  in the work setting and interaction with the public, co-workers, and supervisors.

15         In making this finding, the ALJ clearly considered each of Mr. Walters's

16  allegations about his mental health based symptoms because he specifically

17  incorporated limitations that address those symptoms.  Because Mr. Walters

18  experiences low periods where he has difficulty interacting appropriately with

19  others, the ALJ limited his contact with the public, co-workers, and supervisors.

20  AR 18.  Because Mr. Walters has difficulty maintaining focus and retaining

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 26

1    information, the ALJ limited him to unskilled work that involves only simple

2    duties that require little or no judgment.  *See* AR 18; *see also* 20 C.F.R. §

3    404.1568(a) (defining unskilled work).  Although Mr. Walters may believe that his

4    testimony demonstrates greater functional limitation than reflected by his residual

5    functional capacity, as the ALJ's discussion of the evidence elucidates, AR 22, the

6    combination of Mr. Walters's activities of daily living along with evidence of

7    generally intact cognitive functioning and continuous failure to adhere to the

8    treatment plan undermines his claims that he is more limited than assessed by the

9    ALJ.

10          During the period of disability, Mr. Walters's mental health treatment was

11   provided primarily by Howard Harrison, M.D.  In July of 2008, during the initial

12   evaluation of Mr. Walters, Dr. Harrison noted that Mr. Walters had a full scale IQ

13   of 94, exhibited sufficient judgment and insight, and displayed intact memory.  AR

14   456.  Although Mr. Walters initially exhibited mood instability and inattentiveness,

15   AR 453-54, it is clear that marijuana use exacerbated these difficulties and

16   medication provided significant relief.[5]

17

18   ---

[5] To be clear, the Court does not consider Dexedrine to be among the
19   medications that have helped Mr. Walters achieve the "generally intact
     cognitive function" described by the ALJ.  Dr. Harrison discontinued
     Dexedrine in October of 2008 due to a significant "hypertensive reaction"
20   that sent Mr. Walters to the emergency room.  AR 454.  Because Mr. Walters
     cannot safely take Dexedrine, any improvement in symptoms attributable to
     Dexedrine, *see e.g.* AR 455, is not relevant to whether he is ultimately
     disabled.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 27**

In September of 2008, Dr. Harrison noted that Mr. Walters was "using marijuana continuously" and requested that he "abstain from all marijuana" because his use could render his medication ineffective. AR 453. When Mr. Walters reduced his marijuana consumption and began taking Depakote, he reported better attentiveness and mood stability. *See* AR 452 ("[Mr. Walters] states he feels the Depakote is helping his mood stability . . . . he also claims he's only using [marijuana] about every three weeks"); AR 453 ("[Mr. Walters] is finally on Depakote and it is helping with more stable moods, less irritability, and even better attention."). Mr. Walters experienced even greater improvement taking Lamictal. *See* AR 451 ("[Mr. Walters] thinks the Lamictal has improved his mood."). Periods where Mr. Walters reports increased depression, irritability, or inattentiveness are accompanied by a failure to take his medication as prescribed or to adhere to Dr. Harrison's direction to abstain from marijuana. *See, e.g.*, AR 451 (indicating that Mr. Walters's was not taking his medications as prescribed); AR 452-53 (reporting increased anger issues and continued marijuana use); AR 528 (indicating that Mr. Walters was having difficulty remembering information from college level courses and was irritable at home, but that he was only intermittently taking his medications). Periods where Dr. Harrison notes reduction in marijuana use or adherence to medication dosage, on the other hand, coincide with an improvement in symptoms. AR 451 (noting improved mood after receiving

Lamictal prescription); AR 452 (noting reduction in marijuana use and that Mr. Walters appeared "calm and focused" and reported improved mood stability); AR 526 (indicating that Mr. Walters had "no complaints about his medication" and that his speech was normal and mood euthymic).

As the preceding analysis elucidates, when Mr. Walters follows Dr. Harrison's prescribed treatment plan, by refraining from marijuana use and taking his medication as prescribed, his symptomatology improves significantly.  Social Security regulations specifically contemplate an ALJ's consideration of a claimant's adherence to a treatment plan proffered a treating physician.  20 C.F.R. 404.1530(a) & (b).  Mr. Walters's failure to follow Dr. Harrison's treatment plan without good reason provides additional reason to doubt that he is as limited as he claims.[6]  *See* 20 C.F.R. 404.1530(b).

Even when Mr. Walters returned to heavy marijuana use, his performance during psychological examinations did not evidence limitation greater than assessed by the ALJ.  A consultative psychological evaluation performed by Emma Billings M.D. in April of 2011 revealed that Mr. Walters's fund of general

---

[6] In fact, the regulations go further.  Not only is a failure to follow treatment an indication that an individual is not as limited as alleged, but apparently, a failure to follow prescribed treatment provides reason, by itself, not to award benefits.  20 C.F.R. § 404.1530(a) indicates that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  20. C.F.R. § 404.1530(b) clarifies this requirement, stating that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 29

information and memory for past information were within average ranges, despite

essentially daily marijuana use.  AR 449.  During that same examination, Dr.

Billings noted that his memory for recent information was "good" and that he

could recall three out of three objects after a five-minute time delay.  Dr. Billings

assessed a Global Assessment of Functioning ("GAF") score of 59, which she

indicated reflects Mr. Walters's mild impairment in occupational and social

functioning.  AR 450.

     Mr. Walters's activities similarly belie his contention that he is more limited

than his residual functional capacity would suggest.  Even before being treated by

Dr. Harrison in July of 2008, Mr. Walters was able to complete an automotive

technical course at Yakima Valley Community College in which he received a 3.87

grade point average.  AR 447.  During the period of disability, Mr. Walters

reported reading, watching television and movies, and drawing daily.  AR 215.  He

also attended classes at the Yakima Valley Technical Skills Center, although he

needed tutoring from his wife to complete them.  Each of these activities require

some degree of sustained concentration and attention, which, when considered

together suggest that Mr. Walters attention is sufficient to perform the simple tasks

required by unskilled work.

     Ultimately, the ALJ considered and accommodated, to some degree, each of

Mr. Walters's mental health symptomatology allegations.  Although Mr. Walters

claims the ALJ should have found additional limitations based on his testimony,

substantial evidence supports the ALJ's interpretation of the record: that Mr.

Walters displays "generally intact cognitive function" such that he is capable of

performing unskilled work with only occasional interaction with others and

changes in the workplace.

### C. Lay-Witness Testimony

In determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work. *Stout v. Comm'r of*

*Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*,

12 F.3d 915, 919 (9th Cir. 1993). Lay testimony is competent evidence and as

such cannot be disregarded without comment. *Molina v. Astrue*, 674 F.3d 1104,

1114 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996)). To discount lay-witness testimony, the ALJ must give reasons germane to

each witness. *Molina*, 674 F.3d at 1114.

Here, ALJ Mangrum indicated that he considered the opinions of "non-

medical sources that did not see the claimant in a professional capacity (*e.g.*

spouses, parents)," AR 24, but provided no reason for discounting Ms. Walters's

testimony specifically. The ALJ's failure to mention Ms. Walters's testimony

clearly runs afoul of the Ninth Circuit's instruction that lay-witness testimony not

"be disregarded without comment." *See Molina*, 674 F.3d at 1114.  Nevertheless, the ALJ's error in this context is harmless.

"An ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011).  Here, Ms. Walters testified that her husband requires extensive tutoring, that he experiences low, grouchy periods where "life for him just has to stop," AR 48, and that he has problems with memory and attention span, AR 49-50.  Mr. Walters testified to substantially similar problems.  *See* AR 43 (speaking about low periods and difficulties retaining information from instructions at school); AR 44-46 (recounting his difficulties in school and the tutoring he receives from his wife); AR 48 (indicating that his small attention span is the primary contributor to his poor performance in school).  Although Ms. Walters testified in greater detail about Mr. Walters's limitations than he himself did, the evidence cited by the ALJ in discrediting Mr. Walters's testimony concerning his mental health based symptoms also serves to discredit Ms. Walters's testimony concerning those same symptoms.  Because, as discussed above, *supra* pp. 21-31, the ALJ properly discredited Mr. Walters's testimony, his failure to discuss Ms. Walters's testimony about the same issues is harmless.

\\

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**~ 32

# VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free of legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 21,** is **GRANTED.**

3.  The District Court Executive is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 15th day of June, 2016.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 33**